United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL HENDERSON,

      Petitioner,

  v.

M. MCDONALD, Warden,

      Respondent.

_____/

No. C 11-04254 YGR

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Michael Henderson, an inmate at High Desert State Prison, seeks federal relief from his state convictions.  For the reasons set forth below, the petition for such relief is **DENIED**.

## BACKGROUND

On November 6, 2008, an Alameda County Superior Court jury found Petitioner guilty of attempted murder, assault with a firearm, and mayhem.  The trial court sentenced Petitioner to a state prison for an indeterminate term of life with the possibility of parole, in addition to an enhancement term of 27 years to life.

The following statement of facts is taken from the reasoned decision of the California Court of Appeal.

> Sidney Joesph testified that he had known defendant since 2004, when they met through mutual friends.  In 2004 they saw each other "every day" around the intersection of 90th Street and MacArthur Boulevard in Oakland.  Joseph knew defendant as "Mike."

In September 2004, the two men had an argument after someone told Joseph that defendant had made an unfavorable statement about him. Joseph approached defendant at a Mexican restaurant, tried to grab him, and the two wrestled and threw punches at each other. The fight moved outside of the restaurant and was broken up by others. Joseph felt that he had lost the fight. Joseph saw defendant the next day but they did not interact.

Joseph next saw defendant in February 2006, again near the intersection of 90th Street and MacArthur Boulevard. Defendant was in a car and Joseph was standing at the sidewalk. Defendant drove past and made eye contact with Joseph but did not stop. After that, Joseph saw defendant almost every day near the same intersection, though the men did not talk to each other.

On the afternoon of April 13, 2006, Joseph was at the corner of 90th and MacArthur with his friend Antwan, speaking with another friend, Eric. Defendant approached the men and stopped approximately five feet from them. Defendant said, "What's up, Joe-Joe," which is Joseph's nickname. Defendant's tone of voice suggested he was "trying to start something, like an argument," and he was "gritting his teeth, grinding his teeth real hard." Joseph responded, "What do you mean, what's up?" and defendant started "nodding his head and he had his hand in his pocket, like fidgeting, reaching for something, trying to pull out something." Defendant pulled a black revolver from his right pocket. Joseph turned and ran. Joseph saw defendant "lift it up to start opening fire." He heard two or three gunshots. After the second shot, he felt a pain in his stomach, side and back and lost feeling in his legs. He fell to the ground. He saw Mike running across the street.

Office Carletta Garrett testified that she was on patrol on April 13, 2006 when she was called to 90th Street and MacArthur Boulevard. When she arrived she saw a crowd and Joseph lying on the ground. She talked to him, and he told her that "Mike" shot him. Joseph was surprised that defendant shot him because "I knew we had problems, but I didn't know it had got that far, that he had that feeling toward me to want to walk up to pull out a gun to shoot me." Joseph identified defendant in a photo lineup as the person who shot him.

Defendant was arrested when he appeared in court to be sentenced on another matter. After he was arrested, Sergeant Rebecca Campbell interviewed him. Campbell told him that she was investigating a shooting that occurred on April 13 around 3:30 p.m. near 90th and MacArthur and asked defendant, "[D]id you do this?" Defendant said he did not and told Campbell that he was in Fairfield on that day. Campbell then showed defendant a videotape of the incident the police had obtained from a surveillance camera at a smoke shop at the corner of 90th Street and MacArthur Boulevard. The tape showed that defendant was present that day.

Defendant testified that he knew Joseph but that they were never friends. He testified that in 2004 he was eating in a restaurant when Joseph entered and "was talking about something I said something about him and he stared taking a nasty attitude with me. So

2

United States District Court

For the Northern District of California

I stood up." Joseph then hit him in the face. The altercation ended outside the restaurant when others broke it up. Defendant felt that he "got the better outcome of the situation" and that he had no reason to seek revenge. Defendant saw Joseph the next day but nothing happened.

On April 13, 2006, defendant's sister dropped him off at 89th and Hillside, about two blocks from 90th and MacArthur, to meet some friends. After visiting with his friends, defendant walked towards 90th and MacArthur where he was expecting to meet his sister. Defendant had not spoken with Joseph and did not know he was going to be at the intersection. He testified that, "As I was walking up 90th towards MacArthur, I seen someone walking towards me. . . . Me and the person who was walking towards me was five steps away, and then the person stops and he turns around." Defendant did not know the man. He had on a yellow shirt and was bald. When the man turned, he walked around the corner of 90th and MacArthur. Defendant heard gunshots and then saw the man run towards 94th. Defendant testified that he then rounded the corner and that is when his image was captured on the videotape He ran when he heard the shots and did not see who had been shot. He called his sister to ask her to pick him up at 88th and MacArthur.

Defendant denied that he was carrying a gun on April 13. Rather, he stated that he was holding a "beanie" hat in his hand, which is what was seen on the videotape. He testified that when he told Campbell he was in Fairfield, "I was trying to say I was on my way to Fairfield, but it slipped out the wrong way."

*People v. Henderson*, California Court of Appeal, case number A123553 at 1-4 (hereinafter "Exh. F").

## LEGAL STANDARD

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state

United States District Court
For the Northern District of California

1    court, *see Baker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005).

2          "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

3    arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question

4    of law or if the state court decides a case differently than [the] Court has on a set of materially

5    indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).  "Under the

6    'unreasonable application' clause, a federal habeas court may grant the writ if the state court

7    identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

8    that principle to the facts of the prisoner's case." *Id*. at 413.  "[A] federal habeas court may not issue

9    the writ simply because that court concludes in its independent judgment that the relevant state-court

10   decision applied clearly established federal law erroneously or incorrectly.  Rather, that application

11   must also be unreasonable." *Id*. at 411.  A federal habeas court making the "unreasonable

12   application" inquiry should ask whether the state court's application of clearly established federal

13   law was "objectively unreasonable." *Id*. at 409.

14
                                          **DISCUSSION**

15
16         As his sole ground for federal habeas relief, Petitioner asserts that insufficient evidence

17   supports the finding that he premeditated and deliberated the attempted murder of his victim.  This

18   claim was addressed in a detailed, reasoned opinion on direct appeal.

19                      On appeal, defendant argues that there was insufficient
                 evidence that the attempted murder was premeditated. "In reviewing
20               appellant's insufficiency of evidence argument, we ask not whether
                 there is evidence from which the trier of fact could have reached some
21               other conclusion, but whether, viewing the evidence in the light most
                 favorable to respondent, and presuming in support of the judgment the
22               existence of every fact the trier reasonably could deduce from the
                 evidence, there is substantial evidence of appellant's guilt, i.e.
23               evidence that is credible and of solid value, from which a reasonable
                 trier of fact could have found the defendant guilty beyond a reasonable
24               doubt.  Thus, our sole function as a reviewing court in determining the
                 sufficiency of the evidence is to determine if any rational trier of fact
25               could have found the essential elements of the crime beyond a
                 reasonable doubt." (*In re Michael M.* (2001) 86 Cal. App. 4th 718,
26               726, fn. omitted.)

27                      "An intentional killing is premeditated and deliberate if it
                 occurred as the result of preexisting thought and reflection rather than
28               unconsidered or rash impulse.  [Citations.]  However, the requisite

                                              4

reflection need not span a specific or extended period of time."'" Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly."''" (*People v. Stitely* (2005) 35 Cal. 4th 514, 543.)  "The type of evidence which this court has found sufficient to sustain a finding premeditation and deliberation falls into three basic categories: (1) facts about how and what defendant did prior to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing -- what may be characterized as 'planning' activity; (2) facts about the defendant's prior relationship and /or conduct with the victim from which the jury could reasonably infer a "motive" to kill the victim, which inference of motive, together with facts of type (1) or (3), would in turn support an inference that the killing was the result of 'a pre-existing reflection' and 'careful thought and weighing of considerations' rather than 'mere unconsidered or rash impulse hastily executed' [citation]; (3) facts about the nature of the killing from which the jury could infer that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2)." (*People v. Anderson* (1968) 70 Cal. 2d 15, 26-27.)  "The *Anderson* factors, while helpful for purposes of review, are not a *sine qua non* to finding first degree premeditated murder, nor are they exclusive." (*People v. Perez* (1992) 2 Cal. 4th 1117, 1125.)

In this case, there was evidence of planning in that defendant, armed with a loaded gun, arrived on a street corner where he knew Joseph was often present.  "That defendant armed himself prior to the attack 'supports the inference that he planned a violent encounter.'" (*People v. Elliott* (2005) 37 Cal. 4th 453, 471.)  Defendant argues that his possession of a gun that day was not evidence of planning because there was no evidence that he knew that Joseph would be present when he arrived on the street corner.  However, Joseph testified that he had seen defendant at that street corner "every day almost" since February 2006, which supports the inference that defendant expected Joseph to be there on the day in question.  Defendant attempts to distinguish *People v. Elliott* because in that case the defendant had spent the day lying in wait for the victim and had talked to others about obtaining a new knife before the attack.  However, in *People v. Marks* (2003) 31 Cal. 4th 197, on which the court in *Elliott* relied, the evidence of planning was that the defendant "brought a gun rather than money with which to pay for the taxi ride." (*Id.* at p. 230).  Although the evidence of planning was stronger in *Elliott*, the evidence here was sufficient to support the inference that defendant came to the 90th Street and MacArthur intersection carrying a gun, anticipating that he would see Joseph that afternoon.

The manner of the shooting also provides evidence that supports a finding of premeditation.  Joseph testified that defendant spoke to him "like [he was] trying to start something, like an argument," and was "grinding his teeth real hard."  According to the evidence, Joseph did nothing to provoke the shooting.  "The lack of provocation by the victim leads to an inference that an attack was the result of a deliberate plan." (*People v. Miranda* (1987) 44 Cal. 3d 57, 87). . . .  Defendant

5

argues that Joseph's sarcastic response to [defendant's] greeting" was sufficient to provoke an unplanned attack.  Although a jury might have so interpreted the evidence, the jury also could reasonably have found that defendant's manner and the minimal interaction between the men prior to the shooting indicated that defendant had come to the corner with the premeditated intention of killing Joseph.

> Moreover, there was also evidence that Joseph had previously instigated a fight with defendant, which might have provided defendant with a motive.  The Attorney General cites *People v. Hyde* (1985) 166 Cal. App. 3d 463, 478 for the proposition that revenge is a sufficient motive to support a finding of premeditation.  Defendant argues that in that case "the defendant spent weeks pursuing his victim in every conceivable way, and after the killing, took every opportunity to describe his satisfaction with his revenge."  While the circumstances in the present case undoubtedly are less extreme, and the evidence of a revenge motive less compelling, nevertheless there was sufficient evidence to support an inference that defendant remained angry about the fight that Joseph had started two years before.  Although both men testified that defendant got the better of Joseph in the fight, there was a history of animosity between the two men that could have provided a motive for the shooting.

> In short, although the evidence might well have supported a contrary finding, it was nonetheless sufficient to support the finding that the jury did make, that defendant deliberately and with premeditation shot and attempted to kill Joseph.

Exh. F at 4-7.

The rejection of this claim by the state appellate court was neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court authority.  In addition, the state court's decision was not based on an unreasonable determination of the facts.

Demonstrating entitlement to habeas relief based on a claim of insufficient evidence requires a substantial showing.  Because the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged", *In re Winship*, 397 U.S. 358, 364 (1970), a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim.  *See Jackson v. Virginia*, 443 U.S. 307, 321-324 (1979).

The Supreme Court has emphasized, however, that "*Jackson* claims face a high bar in federal habeas proceedings . . ."  *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam) (finding

6

that the 3rd Circuit "unduly impinged on the jury's role as factfinder" and failed to apply the deferential standard of *Jackson* when it engaged in "fine-grained factual parsing" to find that the evidence was insufficient to support petitioner's conviction).   A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992);  *see also Coleman*, 132 S. Ct. at 2065 ("the only question under *Jackson* is whether [the jury's finding of guilt] was so insupportable as to fall below the threshold of bare rationality").   Rather, the federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Payne,* 982 F.2d at 338 (quoting *Jackson*, 443 U.S. at 319).  A due process violation may be found only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338.   Furthermore, a federal habeas court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any [] conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The court may not substitute its judgment for that of the jury, *see Coleman*, 132 S. Ct. at 2065, and under *Jackson*'s standard of review, a jury's credibility determinations are entitled to near-total deference.  *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

Here, as the California Supreme Court reasonably found, a rational trier of fact could have found that Petitioner's attempted murder was premeditated and deliberate.  *Payne,* 982 F.2d at 338. Under California law, premeditation and deliberation may be found when there is evidence of "preexisting thought and reflection rather than unconsidered or rash impulse."  *People v. Stitely*, 35 Cal. 4th 514, 543 (2005).  Included in the factors a jury may consider when evaluating whether a murder or attempted murder is premeditated and deliberate are planning, motive, and the nature and manner of the attack.  *People v. Anderson*, 60 Cal. 2d 15, 25 (1968); Exh. F at 5.

Here, there was more than enough evidence for a rational jury to find that the attempted murder was premeditated and deliberate.  As the California Supreme Court detailed, there was evidence of planning and motive on the part of Petitioner.  Exh. F at 5-6.  For example, Petitioner carried a gun to the crime scene, a place where he could reasonably have expected to encounter the

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1
2  victim.  Exh. F at 5-6.  In addition, Petitioner had a demonstrated motive, since he had once been
3  publicly attacked by the victim.  Exh. F at 6-7.  Finally, the manner and nature of the attack support
4  a finding of premeditation, since the evidence showed that Petitioner approached the victim
5  unprovoked, and shot him in the back repeatedly as he was running away from Petitioner.  Exh. F at
6  2, 6 (finding that "'lack of provocation by the victim leads to an inference that an attack was the
7  result of a deliberate plan'" [citations omitted]).   Accordingly, this Court finds that, after "'viewing
8  the evidence in the light most favorable to the prosecution'", a rational trier of fact "'could have
9  found the essential elements of the crime beyond a reasonable doubt.'"  *Payne,* 982 F.2d at 338
10 (quoting *Jackson*, 443 U.S. at 319).
11
        Because Petitioner cannot demonstrate that the rejection of this claim by the state appellate
12 court was either contrary to or an unreasonable application of, clearly established United States
13 Supreme Court authority, this claim must be denied.
14
15                                    **CONCLUSION**
16        For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.
17        Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule
18 on whether a petitioner is entitled to a certificate of appealability in the same order in which the
19 petition is denied.  Petitioner has failed to make a substantial showing that his claim amounted to a
20 denial of his constitutional rights or demonstrate that a reasonable jurist would find the denial of his
21 claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Consequently, no
22 certificate of appealability is warranted in this case.
23        The clerk shall enter judgment and close the file.
24
25
26        IT IS SO ORDERED.
27 DATED:  January 10, 2013 _____          _____
                                                          **YVONNE GONZALEZ ROGERS**
28                                                        **UNITED STATES DISTRICT COURT JUDGE**

                                    8